NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JOHN RYAN,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

_____

2024-1814

_____

Petition for review of the Merit Systems Protection Board in No. CH-0752-22-0147-I-1.

_____

Decided:  February 19, 2026

_____

JAMES NOWOGROCKI, Summers Compton Wells LLC, St. Louis, MO, argued for petitioner.

DOUGLAS GLENN EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, ALBERT S. IAROSSI, PATRICIA M. MCCARTHY; DANE ROBERT ROPER, Office of General Counsel, United States Department of Veterans Affairs, St. Louis, MO.

_____

Before LOURIE, PROST, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

In 2022, the Veterans Health Administration of the Department of Veterans Affairs (agency) terminated the employment of John Ryan, a clinical social worker, for careless performance and inappropriate conduct. Both charges related to Mr. Ryan's actions or inaction involving a veteran under his care who was identified as presenting a high risk for suicide. The Merit Systems Protection Board sustained Mr. Ryan's removal. *See Ryan v. Department of Veterans Affairs*, No. CH-0752-22-0147-I-1, 2024 WL 1232093 (M.S.P.B. Mar. 21, 2024) (*Final Board Decision*); J.A. 1–7. We now affirm the Board's decision.

I

Mr. Ryan began working as a clinical social worker at the agency in 2007, and during the time relevant here, he was assigned to the Post-Traumatic Stress Disorder Clinic. Mr. Ryan received training on suicide screenings, evaluations, and assessments as well as on requirements for documenting clinical encounters. *See* J.A. 839–40, 1301. He was responsible for providing psychotherapy to approximately 60 to 70 veteran patients.

Patient No. 7918 ("the patient"), who was identified as presenting a high risk for suicide, was under Mr. Ryan's care. Mr. Ryan met with the patient monthly. On several occasions, the patient reported to Mr. Ryan his suicidal ideations and the method of suicide he contemplated.

Pain management was a significant issue for the patient. He had received acupuncture treatment for pain management, and Mr. Ryan several times communicated to the patient about securing continued acupuncture treatment from the agency. *See* J.A. 632, 658, 673, 946–48. The communications conflicted with the agency's acupuncture

plan for the patient, and other providers opined that the communications created confusion and unrealistic expectations for the patient, increasing his suicide risk. *See, e.g.*, J.A. 947–48.

In March 2021, the patient called Mr. Ryan's telephone, which answered with a recorded message stating that Mr. Ryan would be out of the office until six days later and providing alternative numbers for emergency aid. J.A. 658. The patient left a voicemail stating that "[the agency had] only authorized [him] 8 visits of acupuncture . . . . I can't pay it . . . . I don't know [w]hat to do," and that he would "probably be dead" before Mr. Ryan returned his call. *Id.* Mr. Ryan called the patient six days later, who said to Mr. Ryan that he was not suicidal, and the patient remained under Mr. Ryan's care. J.A. 868, 1185. Critically for the present case, Mr. Ryan never completed the "suicide behavior and overdose report" required by the agency to document this incident. J.A. 1254.

In October 2021, the head of the agency's St. Louis mental health unit informed Mr. Ryan of his proposed removal under 5 U.S.C. §§ 7512, 7513. J.A. 388–402. The notice stated two charges relating to Mr. Ryan's conduct with the patient. The first charge alleged careless performance. In support, the agency stated twenty-seven specifications of instances of Mr. Ryan's alleged failure to comply with agency patient-care and clinical-documentation policies. J.A. 388–97. The second charge alleged inappropriate conduct. In support, the agency stated six specifications of instances of Mr. Ryan's allegedly providing advice about acupuncture to the patient that was outside his scope of practice as a social worker and unauthorized by the agency. J.A. 397–98. The proposing official reviewed each of the factors recited in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), for consideration of the appropriate penalty, J.A. 406–08, and stated that Mr. Ryan's pattern of careless and

inappropriate conduct would be treated as an aggravating factor in the penalty analysis, J.A. 398–99.

On January 3, 2022, the deciding official, who was the Medical Center Director of the agency's St. Louis Healthcare System, sustained both charges and concluded that Mr. Ryan should be removed because the charges were "of such gravity that mitigation of the proposed penalty is not warranted, and that the penalty of removal is appropriate and within the range of reasonableness." J.A. 153; *see* J.A. 153–55. The deciding official explained that he had reviewed the proposing official's analysis of aggravating factors and also considered other factors. J.A. 153; *see also* J.A. 1171 (deciding official's testimony that he considered and agreed with the proposing official's analysis of the proper application of the *Douglas* factors). Mr. Ryan was removed effective January 15, 2022, and he timely appealed to the Board.

The Board-assigned administrative judge (AJ) held a hearing in August 2024. The AJ then sustained both charges against Mr. Ryan, determining that the agency had proven fourteen of the careless-performance specifications and each inappropriate-conduct specification. *Ryan v. Department of Veterans Affairs*, No. CH-0752-22-0147-I-1, 2022 WL 3578143 (Aug. 18, 2022) (*Initial Board Decision*); J.A. 8–51.[1] The AJ explained that "[p]roof of one or more, but not all, of the supporting specifications is sufficient to sustain a charge." *Id.* at 26 (citing *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990)). The AJ found that the required connection to efficiency of service was established as it was "self-evident that careless performance of [Mr. Ryan's] Social Worker duties impedes satisfactory accomplishment of those duties, particularly as regards patient safety," and that the

---

[1] For the *Initial Board Decision*, we cite the native page numbers (1–44) on the document found at J.A. 8–51.

"sustained charge[ ] of inappropriate conduct [is] inherently connected to the efficiency of the service." *Initial Board Decision*, at 32–33. The AJ then determined that removal was reasonable, crediting the deciding official's judgment that the "serious and repeated nature of [Mr. Ryan's] misconduct" was not sufficiently mitigated by his "fifteen years of service, lack of prior discipline, and fully successful (albeit 'lackluster') performance appraisals." *Id.* at 35.

Mr. Ryan sought review by the Board. The Board adopted the AJ's opinion as its final decision on March 21, 2024, denying Mr. Ryan's petition for review. *Final Board Decision*, at \*1. Mr. Ryan then appealed to this court. ECF No. 1. We have jurisdiction to hear Mr. Ryan's appeal under 28 U.S.C. § 1295(a)(9).

II

We may set aside the decision of the Board only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's factual findings for substantial-evidence support, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966).

Mr. Ryan presents two arguments on appeal. First, Mr. Ryan contends that substantial evidence does not support the Board's decision, specifically challenging the weight the Board gave to certain evidence addressing several specifications of both charges. Petitioner's Opening Br. at 13–33. Our standard of review does not permit us to reweigh the evidence examined by the Board. *Jones*

*v. Department of Health and Human Services*, 834 F.3d 1361, 1369 (Fed. Cir. 2016).  Second, regarding the penalty of removal, Mr. Ryan takes issue with the Board's application of several *Douglas* factors, primarily arguing that, under factor 9, he lacked prior notice of his inappropriate conduct or careless performance.  Petitioner's Opening Br. at 33–36.

## A

We conclude that substantial evidence supports the Board's finding that the agency proved both charges against Mr. Ryan by a preponderance of the evidence.

Regarding the careless-performance charge, the Board recited considerable evidence, including testimony from several doctors at the agency, that Mr. Ryan failed to provide certain required care to the patient (*e.g.*, suicide screenings and psychotherapy) and that he also failed to comply with the agency's clinical-documentation policies on several occasions in 2020 and 2021.  *Initial Board Decision*, at 7–10, 13–25.  Mr. Ryan contends that, even if he did not document that he conducted certain screenings, evaluations, and assessments, there is not "substantial evidence that [he] actually failed to perform his duties."  Petitioner Reply Br. at 6.  But the Board could reasonably credit the testimony of the Specialty Mental Health Programs Manager that, as said in "an adage well-known within the[ ] medical facility: 'If it isn't documented, it didn't happen.'"  *Initial Board Decision*, at 3; *see also* J.A. 1642 (Mr. Ryan's 2020 email stating: "As you know, if it's not in the record it didn't happen."); J.A. 1341 (Mr. Ryan's testimony to the same effect).  Moreover, failure to comply with the agency's documentation policies is itself a wrong identified in many of the careless-performance specifications.  Such documentation deficiencies (whether by omission or by use of unauthorized acronyms to identify clinical care performed, *see* J.A. 656) could leave patient records inaccurate or unintelligible, impairing continuity of care

(especially if multiple providers in a team are providing care or individual providers change over time). *See Initial Board Decision*, at 19, 23; J.A. 1157.

Similarly, substantial evidence supports the Board's finding that Mr. Ryan engaged in inappropriate conduct when advising the patient about acupuncture. Other providers at the agency established through their testimony, which the AJ reasonably credited, that such advice was outside the scope of Mr. Ryan's clinical practice and was not authorized by agency policy. *Initial Board Decision*, at 28. The record sufficiently shows that Mr. Ryan repeatedly informed the patient that he could continue to receive acupuncture despite acupuncture having been identified as a stressor for the patient connected to his suicidal ideation, J.A. 397, and despite Mr. Ryan having been warned by other providers to stay in his clinical-role lane—which did not include acupuncture, *see* J.A. 1614. *Initial Board Decision*, at 26–28, 35.

B

The Board did not err in upholding Mr. Ryan's removal as a reasonable penalty. Where, as here, all charges (though not all specifications) are upheld, the Board's role regarding the remedy is limited. It is to "assure that the agency did conscientiously consider the relevant [*Douglas*] factors and did strike a responsible balance within [the] tolerable limits of reasonableness." *Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1355 (Fed. Cir. 2012) (internal citation and quotation marks omitted). The Board did that, with its discussion justifiably short because the agency's review of the *Douglas* factors was so clear. *Initial Board Decision*, at 35–36. In particular, Mr. Ryan argues chiefly about *Douglas* factor 9, concerning whether he had or lacked notice that his behavior would constitute misconduct. This argument lacks merit.

As to the careless-performance charge, the Board observed that Mr. Ryan received training on the agency's

treatment-documentation requirements, with which he failed to comply. *Initial Board Decision*, at 7–9, 13–14, 17–21, 24, 34–35; *see* J.A. 839–40 (Specialty Mental Health Programs Manager's testimony to the AJ); J.A. 1271, 1615 (Mr. Ryan's acknowledgements of the agency's documentation policy).  Mr. Ryan points to no case, and we are not aware of any, in which we have held that an employee lacked notice of his misconduct, despite that employee having received training on the agency's expectations for his conduct, merely because the agency did not also provide him with a specific notice after the fact of the same.  As to the inappropriateness of his communications about acupuncture, the evidence establishes that Mr. Ryan was informed on multiple occasions that his acupuncture advice to the patient exceeded his scope of practice as a social worker and was unauthorized. *See Initial Board Decision*, at 33–34; J.A. 1616 (notice in 2020); J.A. 1205 (Staff Psychiatrist's testimony); J.A. 1614 (Mr. Ryan's August 2021 acknowledgement of the same).

Mr. Ryan's remaining arguments concerning the Board's application of the *Douglas* factors amount to requests for the court to reweigh the evidence, which we may not do. *See Jones*, 834 F.3d at 1369.  We thus agree with the Board that Mr. Ryan's removal was "within tolerable limits of reasonableness," *Norris*, 675 F.3d at 1352. *See Initial Board Decision*, at 36–37.

### III

For the foregoing reasons, we conclude that the Board's decision is supported by substantial evidence and that Mr. Ryan has failed to show that the decision is arbitrary, capricious, or contrary to any law or regulation.  We affirm.

The parties shall bear their own costs.

**AFFIRMED**